UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


WILLIAM MCANINCH, et al.,

      Plaintiffs,

                              Case No. 2:09-cv-989
     v.                        JUDGE GREGORY L. FROST
                              Magistrate Judge E.A. Preston Deavers

MONRO MUFFLER BRAKE INC.,

      Defendant.


## OPINION AND ORDER

This matter is before the Court for consideration of Defendant's Motion for Summary Judgment (ECF No. 22), Plaintiffs' Response in Opposition to Defendant's Motion for Summary Judgment (ECF No. 59), Defendant's Reply in Support of its Motion for Summary Judgment (ECF No. 64), and Plaintiffs' Motion for Conditional Class Certification and Court Authorized Notice (ECF. No. 19).  For the reasons that follow, the Court **GRANTS** Defendant's motion and **DENIES as MOOT** Plaintiffs' motion.

### I.  Background

**A.  Facts**

Defendant operates retail stores offering full automobile repair service and the sale of automotive goods such as brake pads, tires, and oil.  Defendant provides these goods and services to the general public.  Defendant operates retail stores under the trade name "Mr. Tire Auto Service Centers."

Plaintiffs William McAninch, Casey Wheeler, and Mark Izzo are previous employees of

Defendant.  Plaintiffs were employed as either managers or assistant managers at certain Mr.

Tire Auto Service Centers.  As managers and assistant managers, Plaintiffs generally worked an

alternating five and six day workweeks.  If Plaintiffs worked during the week, they were

normally scheduled to work from 7:00 a.m. to 7:00 p.m.  If Plaintiffs worked on the weekends,

they were normally scheduled to work from 7:00 a.m. to 6:00 p.m. on Saturday and/or from 8:30

a.m. to 5:00 p.m. on Sunday.

During their employment with Defendant, Plaintiffs were not paid overtime pay for hours

worked over forty per week.  Plaintiffs allege that the failure to pay them overtime violates the

overtime provisions of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA").

**B.  Procedural Background**

Plaintiffs filed their complaint on November 2, 2009.  (ECF No. 2.)  The Court held its

preliminary pretrial conference on February 25, 2010.  (ECF No. 9.)  The Court issued its

Preliminary Pretrial Order on that same day, setting certain scheduling dates.  (ECF No. 11.)

The Court set the discovery deadline for December 6, 2010, and the dispositive motions deadline

for January 24, 2011.  The Court also directed the parties to call the Magistrate Judge's chambers

to arrange a collective action scheduling conference.  The Honorable James L. Graham then

scheduled the final pretrial conference for September 9, 2011, and the jury trial for October 11,

2011.  (ECF No. 14.)

On July 20, 2010, the Magistrate Judge held a collective action status conference and

scheduled the date for filing a motion to proceed as a collective action.  (ECF No. 18.)  Pursuant

to that schedule, on September 9, 2010, Plaintiffs filed their Motion for Conditional Class

Certification and Court Authorized Notice.  (ECF. No. 19.)

On October 4, 2010, Defendant filed a motion requesting the Court to stay its decision on the Motion for Conditional Class Certification and Court Authorized Notice pending its decision on summary judgment. (ECF No. 21.) On that same day, Defendants filed their Motion for Summary Judgment. (ECF No. 22.) On October 29, Plaintiffs filed a Motion to Amend the Complaint *Instanter*. (ECF No. 26.)

On March 1, 2011, the Court granted Defendant's motion to stay consideration of Plaintiffs' Motion for Conditional Class Certification and Court Authorized Notice pending decision on Defendant's Motion for Summary Judgment and granted Plaintiffs' Motion to Amend the Complaint *Instanter*. (ECF No. 49.) The Court explained that, "[i]n so far as the amended complaint deletes all of the plaintiffs' state law claims, that branch of defendant's pending motion for summary judgment is now moot." *Id.* at 3. The Court further explained that it would "proceed to consider the defendant's motion for summary judgment on the plaintiffs' FLSA claim as set forth in the amended complaint and as it pertains to the three individually named plaintiffs only." *Id.* The Court then set a briefing schedule on Defendant's Motion for Summary Judgment, which was complete on April 4, 2011.

On June 13, 2011, Judge Graham recused himself from this case. (ECF No. 66.) The case was then randomly assigned to the undersigned judge.

## II. Standard

Rule 56(a) of the Federal Rules of Civil Procedures provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting summary judgment only if the disputes are genuine and

concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although a court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56[(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

### III. Discussion

Under the FLSA, all covered employees must be paid one and one-half times their regular rate of pay for hours worked in excess of forty per week. 29 U.S.C. § 207(a)(1); *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 545-56 (6th Cir. 2006). An employer that violates this provision can be held liable for unpaid overtime compensation plus an equal amount as liquidated damages. 29 U.S.C. § 216(b). Plaintiffs here contend that Defendant has violated the FLSA overtime compensation provision.

Defendant, however, argues that it is excepted from the FLSA's overtime compensation provision. The FLSA's overtime provisions are subject to a number of exceptions, all of which are "to be narrowly construed against employers in order to further Congress's goal of providing broad federal employment protection." *Wilks v. Pep Boys* ("*Wilks I*"), No. 3:02-0837, 11 Wage & Hour Cas. 2d (BNA) 1554, 2006 U.S. Dist. LEXIS 69537, at *32 (Sept. 26, 2006) (citing *Fazekas v. Cleveland Clinic Found. Healthcare Ventures, Inc.*, 204 F.3d 673, 675 (6th Cir. 2000). "In order to claim an exemption, an employer has the burden of proving, 'by a

4

preponderance of the clear and affirmative evidence,' that each employee meets each of the exception's requirements." *Wilks I*, 2006 U.S. Dist. LEXIS 69537, at *32 (citing *Acs v. Detroit Edison Co.*, 444 F.3d 763, 767 (6th Cir. 2006); *Renfro v. Ind. Mich. Power Co.*, 370 F.3d 512, 515 (6th Cir. 2004); *Cowan v. Treetop Enters., Inc.*, 120 F. Supp. 2d 672, 687 (M.D. Tenn. 1999); *Hodgson v. The Klages Coal & Ice. Co.*, 435 F.2d 377, 382 (6th Cir. 1970)). The Sixth Circuit, however, has "made it clear that the employer claiming an FLSA exemption does not bear any heightened evidentiary burden." *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 501-02 (6th Cir. 2007) (citing *Renfro*, 497 F.3d at 576) (clarifying that the "phrase 'clear and affirmative evidence' does not heighten [the defendant's] evidentiary burden when moving for summary judgment . . . . [the defendant] has the burden to establish the . . . elements by a preponderance of the evidence").

In the case *sub judice*, Defendant claims that Plaintiffs fall under the "retail commission" exception to the FLSA's overtime provision. 29 U.S.C. § 207(i). The exception is set forth in Section 7(i), which provides:

> No employer shall be deemed to have violated subsection (a) of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title [describing the minimum wage], and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

29 U.S.C. § 207(i).

In other words, in order to claim this exception, the defendant must demonstrate the following three elements: (1) the stores in which the [] plaintiffs

5

work qualify as "retail or service establishments"; (2) the defendant pays the [] plaintiffs a regular rate of . . . one and one-half times the federal minimum wage, for each hour they work; and (3) the [] plaintiffs receive more than half of their compensation (for a representative period of not less than one month) in the form of commissions earned from the sale of goods or services.  *See* 29 U.S.C. § 207(i); 29 C.F.R. § 779.412 (2000).

*Wilks I*, 2006 U.S. Dist. LEXIS, at *33-34.

Plaintiffs in the instant action contest only the last prong of this test.  That is, Plaintiffs argue that their compensation does not constitute "commissions earned from the sale of goods or services."  In order to make this determination, the Court must first review the compensation structure utilized by Defendant to pay its managers and assistant managers.

## A.  Compensation Structure

### 1.  Terminology

Defendant utilizes the term "controllable profit," to encompass a store's gross profit less all payroll of the managers and assistant managers, benefits of the managers and assistant managers (*i.e.*, payroll taxes, health and dental insurance), controllable expenses, and inventory shortages.  This number is also called a "store contribution."  Gross profit is calculated as sales less cost of those sales to the company and technician payroll.  "Controllable expenses" are utilities, uniforms, refuse, telephone, supplies, small tools, trucks, and bad debt.

The term "budget" is used by Defendant to refer to the expected performance of a particular store.  Prior to each year, Defendant determines what the "earnings expectations" are from the board of directors and investors.  Once earnings goals are obtained, Defendant develops an estimate of all the fixed expenses that go into the budget.  Fixed expenses include rent, amortization, reals estate taxes, and advertising.  Defendant then computes what sales revenue is needed to achieve the earnings goals after fixed expenses are paid.  This is done at the macro

6

level, developing a budget for the company as a whole.

In formulating store budgets, the main focus is the sales increase that is needed to achieve Defendant's earnings goal. Complete budgets are filtered down to the individual stores, including sales, cost of sales, and specific line items. Historical data is used to spread the sales budget between various types of sales, such as tire sales and service sales. Other budget figures are likewise based on historical data, and include approximately 38 items such as sales adjustments, tires purchases for customers outside the store, inventory variance, gross mechanic profit, mechanical sales, supplies, and payroll taxes. The budget figures culminate in a budget amount of "controllable profit" for each month.

### 2. Pay Plans

Defendant's pay plans for store managers and assistant managers are identical except that assistant managers are ineligible for a year-end bonus.

### a. Percentage of controllable profit at budget

If a manager is right on budget, his compensation is equal to the percentage of controllable profit at budget. For Plaintiffs, the percentage of controllable profit at budget ranged between $48,000 and $63,000. To determine the percentage of controllable profit at budget, Defendant takes the controllable profit from the monthly budget and multiplies that figure times some percentage that is not constant, (*i.e.*, Controllable Profit x % = Percentage of Controllable Profit at Budget).

To determine the non-constant percentage, each quarter of the year is assigned 25% of a store manager's yearly percentage of controllable profit at budget. The quarterly figure is then further broken down into monthly amounts. The assigned amounts are used to calculate the

percentage of commission that managers are supposed to earn each month.  The assigned portion of the percentage of controllable profit at budget is divided by the budgeted store contribution for the month to obtain the percentage, (*i.e.*, Monthly Percentage of Controllable Profit at Budget / Monthly Budget Store Contribution = %).

In formulating its pay plan, Defendant analyzed historical data and determined that its budgeted store profits were regularly higher in certain months and lower in other months.  Based on this information, Defendant lowers the percentage managers earn on the store's controllable profit in the busy months and raises the percentage managers earn on the store's controllable profit in the slow months.  Defendant contends that this fluctuating commission rate prevents a "feast or famine" pay structure in a business that is cyclical.

### b. Draw

Defendant's pay plans for its managers and assistant managers also establishes a daily and aggregate annual draw.  Managers and assistant managers are required to work a minimum amount of hours before being eligible for their daily draw, currently 6 hours per day and at the time this action was filed, 4 hours per day.  The aggregate amount is based on the daily draw multiplied by 286 work days, the number of days a manager works if he follows the alternating 5 and 6 day workweek policy.

The aggregate annual draw is always set at less than the percentage of controllable profit at budget.  For Plaintiffs here, the aggregate annual draw was between 83% and 95% of their store's percentage of controllable profit at budget.  If a manager's or assistant manager's draw is ultimately more than he is due for pay, the unearned draw is recoupalble at a quarterly reconciliation and from the year-end bonus for managers only.

### c.  Calculating pay

Once the commission percentage figure is determined as set forth above, that figure is multiplied by a rough version of the actual store contribution for the month.  This rough version is calculated by taking actual gross profit less actual manager's payroll less budgeted controllable expenses.  To the extent that the monthly percentage exceeds draw, managers receive 80% of the percentage amount.  The other 20% is withheld to cover unearned draw for the quarter and/or any deficiencies found when actual controllable expenses are reconciled at the end of the quarter.

At the end of the quarter, figures are recalculated using actual controllable expenses.  If the quarterly figure, calculated with these actual expenses, exceeds total draw for the quarter, managers receive the excess less whatever has already been paid in draw and percentage payments.  If the quarterly figure is negative, due to unearned draw or higher actual expenses, this amount may be recouped from the 20% of percentage payments withheld.  If the amount due back to Defendant is more than the 20% withheld, that amount is reconciled at the year-end bonus calculation.  The unearned draw does not carry forward into the next quarter.

### d.  Commission capping

Defendant caps earned percentage of commissions at 130% of the percentage of controllable profit at budget.

## B.  Bona Fide Commission Rate Analysis

The retail commission exception to the overtime provisions of the FLSA is set forth in Section 7(i) and dictates that for compensation to be considered a commission, the fee paid to the employee must be based on a "bona fide commission rate."  29 U.S.C. § 207(i).  However,

9

neither the FLSA nor the United States Department of Labor's ("DOL") implementing

regulations provide a definition for the term "commission" as it is used in the retail or service

exemption. *See Wilkes II*, 278 F. App'x at 489; *Parker v. NutriSystem, Inc.*, 620 F.3d 274, 278

(3d Cir. 2010). "Indeed, the meaning of 'commission' under the FLSA 'is an issue that

finds little illumination from the sparse case law and the vague references in statutes and

regulations.' " *Owopetu v. Nationwide CATV Auditing Servs., Inc.*, No. 5:10-cv-18, 2011 U.S.

Dist. LEXIS 24948, at *9, 161 Lab. Cas. (CCH) P35,884 (D. Vt. March 11, 2011) (quoting

*Klinedinst v. Swift Invs., Inc.*, 260 F.3d 1251, 1254 (11th Cir. 2001)). "The ultimate question of

whether an employer is exempt from the overtime wage requirement is a question of law."

*Keyes v. Car-X Auto Serv.*, No. 1:07-cv-503, 2009 U.S. Dist. LEXIS 108981, at *5 (S.D. Ohio

Sept. 30, 2009)[1] (citing *Ale v. TVA*, 269 F.3d 680, 691 (6th Cir. 2001); *Icicle Seafoods, Inc. v.

Worthington*, 475 U.S. 709, 714, 106 S. Ct. 1527, 89 L. Ed. 2d 739 (1986)). "Consequently, the

issue of whether more than one-half of Plaintiffs' compensation consisted of commissions is a

question of law." *Id.*

　　　　Here, Defendant argues that it is entitled to the exemption because its pay plan possesses

the attributes the courts and the DOL have found indicative of bona fide commission rates. This

Court agrees.

### 1. Proportionality

　　　　In the only case in which the Sixth Circuit considered whether a commission rate was

bona fide, the appellate court explained that "that to constitute a commission under 29 U.S.C. §

---

　　　　[1]This Report and Recommendation was adopted by the District Judge in *Keyes v. Car-X Auto Service*," No. C-1-07-503, 158 Lab. Cas. (CCH) P35,668, 2009 U.S. Dist. LEXIS 108980 (S.D. Ohio Nov. 20, 2009).

207(i), the employer must establish some proportionality between the compensation to the employees and the amount charged to the customer."  *Wilks v. Pep Boys*, 278 Fed. Appx. 488, 489 (6th Cir. 2008)[2] ("*Wilks II*").  Plaintiffs contend that proportionality is not present in Defendant's pay plan because Defendant "disconnects proportionality by injecting multiple factors and exercising its discretion."  (ECF No. 59 at 29.)  Further, Defendant contends that "Plaintiffs assert that [Defendant]'s commission plan does not exhibit proportionality because employees are paid a percentage of profit, rather than a percentage of sales."  (ECF No. 64 at 3.)

### a.  Percentage of the profit as opposed to a percentage of the sales

Defendant addresses an argument that it maintains was made by Plaintiffs related to the compensation plan determining the employee's pay based on a percentage of profit, rather than a percentage of sales.  The Court disagrees that Plaintiffs make such an argument.  However, to the extent that Plaintiffs do, that argument fails.  A commission can be tied to a retail establishment's profit.  *See* 29 C.F.R. § 779.413(b) ("Although typically in retail or service establishments commission payments are keyed to sales, the requirement of the exemption is that more than half the employee's compensation represent commissions 'on goods or services,'

---

[2]In affirming *Wilks I*, the Sixth Circuit stated:

> [W]e conclude that the district court's comprehensive and well-reasoned opinion supports its legal conclusion and the denial of Defendant's motion for partial summary judgment.  Because the issuance of a detailed written opinion by this Court would be repetitious, the judgment rendered by the Honorable Aleta A. Trauger is affirmed on the basis of the reasoning set forth in the September 26, 2006 opinion and order.

*Wilks II*, 278 F. App'x at 489-90.

which would include all types of commissions customarily based on the goods or services which the establishment sells, and not exclusively those measured by 'sales' of these goods or services."); *Mechmet v. Four Seasons Hotels, Ltd.*, 639 F. Supp. 330, 339 (N.D. Ill. 1986) *aff'd*, 825 F.2d 1173 (7th Cir. 1987) (compensating employees in a manner that ties the financial success of the employees to the financial success of the employer is permissible).

### b.  Multiple factors and Defendant's discretion

Plaintiffs contend that proportionality is not present in Defendant's pay plan because the plan disconnects proportionality by injecting multiple factors and allowing Defendant to exercise discretion in setting the commission rate.  Specifically, Plaintiffs argue that "[t]he more conditions [Defendant] imposes on a commission through the factors it uses in determining profitability and the more discretion it exercises in fluctuating the commission rate, the stronger Plaintiffs' argument that a reasonable jury could determine [Defendant] failed to prove by a preponderance of the evidence the bona fides of its commission rate."  (ECF No. 59 at 25-26.)

Initially, the Court notes that in the instant action the determination as to whether Defendant's compensation structure exhibits the necessary proportionality is an issue of law for the Court to determine.  The parties do not dispute any facts related to how Defendant determines the calculations used to establish Plaintiffs' pay nor do the parties dispute whether Defendant actually follows that established format to calculate Plaintiffs' pay.  *See e.g., Alvarado v. Corporate Cleaning Svc., Inc.*, 719 F. Supp. 2d 935 (N.D. Ill. 2010) (summary judgment was denied because questions of fact surrounded whether the employer actually applied their claimed methodology of compensation).  Plaintiffs admit that the "overall question of whether a compensation structure uses a bona fide commission rate is one of law" but then

12

contend that whether a compensation structure uses a bona fide commission rate is not the issue before the Court.  Instead, Plaintiffs claim in a footnote that the real issue before the Court is whether Plaintiffs were joint employers with Defendant.  That issue, Plaintiffs contend is essentially a question of fact.  (ECF No. 59 at 4, fn. 3) (relying on *Biore v. Greyhound Corp.*, 376 U.S. 473, 481 (1964) and *Donovan v. Sabine Irrigation Co.*, 695 F.2d 190, 194 (5th Cir. 1983)).  Plaintiffs' argument is without merit.

Unlike the issue in *Biore* and *Donovan*, the issue before the Court is not whether Plaintiffs are "employers" within the meaning of the National Labor Relations Act, 29 U.S.C. § 159(c) or Section 203(d) of the FLSA.  The issue before the Court is whether Defendant's compensation structure utilizes a bona fide commission rate, which is a question of law, not fact.

As to Plaintiffs' argument regarding discretion, Plaintiffs contend that Defendant's exercise of "discretion" in setting the percentage of the store's controllable profit that the managers and assistant managers earn weighs against a finding of proportionality.  This Court disagrees.  All employers exercise discretion in setting commission rates.  Any employer that pays an employee a percentage of the sales or profits of a retail establishment in which the employee works sets that percentage rate at its discretion.  What Plaintiffs are actually taking issue with is that the percentage rate fluctuates pursuant to a complicated pay structure.  Yet, all parties agree that a fixed percentage is not necessary for a pay plan to qualify as a bona fide commission rate.  *See e.g., Parker*, 620 F.3d at 283 ("both the [DOL] and other courts have recognized that this strict percentage relationship is not a requirement for a commission scheme under § 7(i)").

The Court next addresses Plaintiffs' argument that because Defendant interjects so many

13

factors into the compensation plan the plan is less likely to be considered proportional. Proportionality between any pay plan, however complicated the plan, requires some relationship or correlation between employee compensation and the sales of the employer.  Courts that determined that proportionality did not exist in a compensation plan found no connection between the employee's pay and the company's sales.  For example, in *Wilks*, because the plaintiffs earned a predetermined amount for each task completed, which did not fluctuate in tandem with the amount charged to customers, there was no proportionality.  *Wilks II*, 278 F. App'x at 489.  Proportionality was also missing where an employee was paid an hourly rate that had no connection to the value of service performed or cost charged to the client.  *Novak v. Mitchell's Motors, Inc.*, No. 9 C 5748, 2011 WL 109083 (N.D. Ill. Jan. 12, 2011).

When an employer can demonstrate the required relationship between an employee's compensation and the company's sales, courts generally find proportionality.  For example, in one of the most recent decisions involving Section 7(i), commissions were found to be sufficiently proportional when based on a percentage of the contract price for each work order completed by the employee.  *Owopetu*, 2011 WL 883703.  Likewise, in *Horn v. Digital Cable & Comm'ns, Inc.*, No. 1:06-CV-325, 2009 WL 4042407 (N.D. Ohio Feb. 11, 2009), the Northern District of Ohio found that the commissions were proportional where the amount paid to the employees was related to the value of services.  *Id.* at *6.  That is, the employees earned a percentage of each service they performed, and they had the ability to influence the customer's purchasing decision.

Proportionality was also found to exist where an employee was not paid a commission based on the amount of the sale, but rather on the difficulty of making the sale.  *Parker*, 620 F.3d

at 283-84. The employees in *Parker* received a higher commission rate for performing "active" outgoing sales calls and a lower commission rate for "passive" incoming sales calls. The Third Circuit specifically held that "the fact that NutriSystem's plan is not calculated strictly as a percentage of sale price does not disqualify it from being a commission under § 7(i)." *Id.* at 283.

In the instant action, Plaintiffs were paid a percentage of their store's controllable profit. Plaintiffs were compensated, in part, based on their ability to keep sales figures high (and in part based on their ability to keep the costs low). An illustration here is helpful. In *Parker*, the Third Circuit stated that: "The District Court offered an example in defining proportionality, which we find helpful: 'proportionality would not exist if an employee were paid the same dollar amount for selling a $10 ring as a $1,000,000 ring." *Id.* at 283. This is plainly not the case here. It is uncontroverted that Plaintiffs make more money on high-gross profit sales, such as fuel service or a transmission flush, as opposed to lower-gross profit sales. Also, Plaintiffs were not paid a set amount for the sale of an item, regardless of the cost to the customer.

Finally, it is not disputed that Plaintiffs had the ability to stimulate and affect a customer's purchasing decisions. For example, one of the plaintiffs testified that he was required to explain to customers why he or she needed a particular product because "[i]f you can explain yourself and tell someone why they need something and explain it to them, then they'll buy it." (Izzo Dep. at 140:5-12.) Indeed, Defendant implemented a program designed to encourage managers to make sales to every customer in their store, referred to as the "NOW" ("No One Walks") program. In the zone in which Plaintiffs' stores were located, an estimated 5% to 10% of store managers achieved 30% more than their budgeted goal and an estimated 40% of the stores in the same zone reached their annual profit improvement over the prior year's sales.

15

While the Court recognizes that the compensation structure utilized is certainly not overly generous, there is still some correlation between employee compensation and the sales of the employer.

Based on the foregoing, the Court concludes that, while Defendant's compensation plan for its managers and assistant managers is certainly complicated, it solidly exhibits the necessary traits to be considered proportional as that term is interpreted under Section 7(i) of the FLSA.

**2. Type of Compensation Plan: Commission Plus a Draw**

Defendant's compensation structure provided Plaintiffs with a daily draw that was set at between 83% and 95% of the controllable profit at budget set for their store. The Regulations specifically provide that pay plans that offer commission plus a draw may qualify as a bona fide commission plan:

> (5) Straight commission with "advances," "guarantees," or "draws." This method of compensation is similar to paragraph (a)(4) of this section [straight commission without advances] except that the employee is paid a fixed weekly, biweekly, semimonthly, or monthly "advance," "guarantee," or "draw." At periodic intervals a settlement is made at which time the payments already made are supplemented by any additional amount by which his commission earnings exceed the amounts previously paid.

29 C.F.R. § 779.413(a)(5).

Plaintiffs contend that their draw was largely non-recoverable and, therefore, operated more like a guaranteed wage or salary. Plaintiffs go on to state that, "[t]he system at bar is operationally indistinguishable from the one found not to be a bona fide commission in *Keyes v. Car-X Auto Service*," 2009 U.S. Dist. LEXIS 108981. (ECF No. 59 at 35.) Plaintiffs' argument is not well taken.

In the *Keyes* "compensation plan, employees were paid the greater of either the

16

commission rate on the total gross sale of services and products attributable to the employee during a given pay period or a 'default' guaranteed wage rate, which was calculated by multiplying the employee's regular hourly rate by the number of hours actually worked in a given pay period."  2009 U.S. Dist. LEXIS 108981, at 7.  Unlike that structure, Plaintiffs here were compensated based completely on a percentage of controllable profit.  Defendant never committed to paying, and Plaintiffs have not acknowledged receiving, *either* the draw or their percentage of controllable profit.  Nor were Plaintiffs assigned an hourly rate by which their hours worked could be multiplied to determine an alternative amount of compensation.  Instead, Defendant's compensation plan qualifies as a straight commission with draw plan.  *See* 29 C.F.R. § 779.413(a)(5).  As opposed to paying Plaintiffs their due commissions when they were calculated, (*i.e.*, at the end of the month or end of the quarter), Defendant paid Plaintiffs a periodic draw payment based on a profit goal, or "budget," set by Defendant.

Moreover, Defendant's compensation plan requires periodic settlement, an aspect of a straight commission with a draw plan noted in the Regulations.  The Regulation on methods of compensation of retail store employees requires that periodic settlements be made so any additional commissions earned over and above the amount of the draw can be paid to the employee.  *See* 29 C.F.R. § 779.413(a)(5).  The reverse (a deduction of any unearned draw) however, is not mentioned.  In fact, as Defendant points out, the Regulation titled "What compensation 'represents commissions' " indicates a recoupment of unearned draw during a periodic settlement is not required.  29 C.F.R § 779.416(a).  That Regulation provides that where commissions earned by the employee are less than what that employee earned in draws, "a deduction of the excess amount from commission earnings for a subsequent period, if otherwise

17

lawful, may or may not be customary under the employment agreement."  29 C.F.R. §
779.416(a).  Thus, an employer could, but is not required to, recoup from its employees any
unearned draw.

The issue of periodic settlement was analyzed in *Viciedo v. New Horizons Learning Ctr.*,
246 F. Supp. 2d 886 (S.D. Ohio 2003).  In *Viciedo*, the Honorable Algenon L. Marbley found
that the commission plan was not bona fide, in part, because of the absence of a periodic
settlement.  *See id.* at 898.  When analyzing the "Level I compensation plan," Judge Marbley
looked only to see whether additional commissions in excess of the draw were paid, not whether
unearned commissions were deducted:  "Under the Level I, however, no periodic settlement
takes place whereby draws are supplemented by the additional amount of commissions earned."
*Id.*

Unlike under the Level I compensation plan analyzed in *Viciedo*, Defendant's plan here
subjected managers and assistant managers to both monthly and quarterly periodic settlements
that always included the addition of earned commissions in excess of draw, as well as the
possible recovery of unearned draw.  At the end of each month, Plaintiffs were paid 80% of the
commissions they earned over and above their draw amount for that month.  The remaining 20%
was held for use during the quarterly reconciliation.  During each monthly reconciliation, if a
certain controllable expense had not been entered into the system, for example, if a utility bill for
the month had not yet arrived, the controllable expense would be estimated for that month.  At
the end of the quarter, another periodic settlement occurred.  During the quarterly settlement,
Defendant calculated the difference between any estimated controllable expenses used during the
monthly settlement and the amount of the actual expenses.  If the manager or assistant manager

was due additional commissions, those amounts were then paid to him. If the employee had any unearned draw at the close of the quarter, that amount was deducted from the 20% held back during the monthly settlements. Where the amount of unearned draw exceeded the 20% withholding, any additional unearned draw could potentially be deducted from a manager's year-end bonus.

While the Court recognizes that Defendant's plan does not make provision for the recovery of all unearned draw in all cases, neither the Regulations nor the case law interpreting those Regulations requires such recoupment for a plan to be considered bona fide. The fact that Defendant's plan provides for periodic settlement whereby draws are supplemented by the additional amount of commissions earned weighs heavily in favor of a finding that Defendant's compensation plan is bona fide.

### 3. Examples from the Regulations

While not offering an example of what a bona fide commission plan is, the Regulations do offer two examples of what it is not:

> A commission rate is not bona fide if the formula for computing the commissions is such that the employee, in fact, always or almost always earns the same fixed amount of compensation for each workweek (as would be the case where the computed commissions seldom or never equal or exceed the amount of the draw or guarantee).

> Another example of a commission plan which would not be considered as bona fide is one in which the employee receives a regular payment consituting [sic] nearly his entire earnings which is expressed in terms of a percentage of the sales which the establishment or department can always be expected to make with only a slight addition to his wages based upon a greatly reduced percentage applied to the sales above the expected quota.

29 C.F.R. § 779.416(c). The parties disagree as to whether Defendant's compensation plan fits into either of these examples.

19

As to the first example, Plaintiffs argue that their commissions seldom or never equaled or exceeded the amount of their draw, which settles their pay structure in the first example of what a bona fide compensation plan is not.  Defendant, however, contends that Plaintiffs commissions exceeded their draw on a more frequent basis than seldom, removing Defendant's pay plan from the first example.  This Court agrees.

For a commission to be based on a bona fide commission rate, 29 C.F.R. § 779.416(c) requires the commissions to exceed the guarantee on a more frequent basis than "seldom."  *See e.g., Herman v. Suwannee Swifty Stores, Inc.*, 19 F. Supp. 2d 1365, 1369 (M.D. Ga. 1998) (holding plan was not bona fide because the employees never earned more than the guaranteed hourly wage).  The Regulations do not define "seldom," but Merriam Webster's Dictionary defines the term as "rarely" or "infrequently."

In *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321 (S.D. N.Y. 2010) and *Lee v. Ethan Allen Retail, Inc.*, 651 F. Supp. 2d 1361 (N.D. Ga 2009), the district courts considered whether the plaintiffs earned more than their draw or guaranteed wage more frequently than seldom.  The employees in *Spicer* were banquet workers who earned a percentage of the banquet fee with a guaranteed minimum hourly rate if the banquet fee was insufficient.  The plaintiffs claimed they seldom earned more than the guaranteed wage rate, so the employer's plan was not bona fide and therefore not exempt under Section 7(i).  The court disagreed, determining that exceeding the guaranteed hourly rate 7 out of 18 events, or 39% of the time, did not indicate the employee "seldom" received more than the guarantee.

In *Ethan Allen*, the employee exceeded her draw in only 4 out of 14 months, or 28% of the time.  For the four months the employee did exceed draw, she did not receive any

commission payment because "throughout her employment at Ethan Allen she maintained a cumulative deficit as a result of her failure to earn enough commissions to cover her draw in prior months." *Ethan Allen*, 651 F. Supp. 2d at 1364.  The court found the employer's plan to be a bona fide commission plan in part because the employee did not always or almost always earn the same fixed amount each week.  The plan provided the employee the opportunity to work more in order to earn more.  Although she only exceeded draw four times and the employer used the additional commissions to reduce the employee's deficit rather than pay them to the employee, "the fact that [the employee] could exceed her draw by increasing sales demonstrates her ability to impact her compensation by increasing sales." *Id.* at 1367.

In the instant action, the evidence before the Court shows that Plaintiff Wheeler exceeded draw 4 out of 14 months, or 29% of the time.  Plaintiff Izzo for 5 of 12 months, or 42% of the time.  Plaintiff McAninch for 5 out of 26 months, or 19% of the time.  In addition, all three plaintiffs also received payments of additional commissions due during quarterly reconciliation. The Court concludes that these totals easily constitute more than seldom.

As to the second example of what a bona fide commission plan is not, it is demonstrated in *Donovan v. Highway Oil, Inc.*, No. 81-4245, 1986 WL 11266 (D. Kan. July 18, 1986).  The employees in *Donovan* were gas station managers, and they earned commissions based upon gallons of gasoline pumped at their stations.  The managers were paid monthly draws in the amount of $1,075.  This figure represented the manager's commission for a threshold sale of 65,000 gallons of gasoline.  For every gallon sold in excess of the threshold, the managers were paid $0.004.  *Donovan* exemplifies a plan in which an employee receives a regular payment constituting almost the employee's entire earnings, which is expressed in terms of a sales amount

21

the employee is expected to make ($1,075 for 65,000 gallons), plus only a slight addition to that

payment based upon a greatly reduced percentage ($0.004 per gallon).

Defendant's compensation plan operates nothing like the plan in *Donovan*.  Plaintiffs are

paid a percentage of controllable profit based on gross sales less controllable expenses for each

month.  The percentage they are paid does not change during the month, and it is certainly not

"greatly reduced."

The Court finds that Defendant's compensation plan does not neatly fit into either

example given in the Regulations of what a bona fide commission rate is not.

### 4. Hours Worked

Another aspects of Defendant's compensation plan that Plaintiffs contend weigh in favor

of finding the plan is not a bona fide one, is that Plaintiffs' pay is not decoupled from the hours

they work.  Plaintiffs argue that they were usually scheduled to work approximately 60 hours per

week regardless of the incentives provided by the commissions in Defendant's pay structure.

Defendants, however, contend that Plaintiffs' pay is not tied to their hours.  This Court agrees.

The Third Circuit has recognized that a "sales associates' compensation is also

'decoupled from actual time worked,' a characteristic both the Seventh Circuit and the

Department identified as a hallmark of 'how commissions work.' "  *Parker*, 620 F.3d at 284

(quoting *Yi v. Sterling Collision Ctrs., Inc.*, 480 F.3d 505, 509 (7th Cir. 2007) and citing  *Dep't*

*of Labor Op. Ltr.*, 2005 WL 3308624 (Nov. 14, 2005)).[3]  That is, when compensation is based on

---

[3]The Sixth Circuit has reiterated the Supreme Court's position that "an opinion of the
Administrator of the Wage and Hour Division of the Department of Labor has persuasive value
if the position of the Administrator is well-considered and well-reasoned."  *Fazekas*, 204 F.3d at
677 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S. Ct. 161, 89 L. Ed. 124 (1944))

sales, as opposed to hours worked, the pay may qualify as a bona fide commission rate.  As the Seventh Circuit explained in *Yi*: "The faster the team works, the more it earns per number of hours, since its commission is based not on the total number of hours it puts in on a job but on the number of booked hours times each team member's booked-hour rate.  That is how commissions work; they are decoupled from actual time worked."  *Yi*, 480 F.3d at 509.  *See also Herman*, 19 F. Supp. 2d at 1371("The whole premise behind earning a commission is that the amount of sales would increase the rate of pay.  Thus, employees may elect to work more hours so they can increase their sales, and in turn, their earnings."); *Erichs v. Venator Group, Inc.*, 128 F. Supp. 2d 1255, 1260 (N.D. Cal. 2001) (same).

In the present case, Defendant's compensation plan provides Plaintiffs with an incentive to work more and to work more productively.  The Court notes, however, that the Sixth Circuit has found this aspect of compensation plans to be of little importance in determining whether a commission rate is bona fide.  *See Wilks II* ("[The Court] notes that the defendant has not cited one statute, rule, or administrative interpretation that bolsters its 'incentive-to-hustle'-based theory of commission.  Rather, support for this notion stems only from judicially created overlay to the FLSA that is non-binding on this court.").  That being said, to the extent that this inquiry is relevant in this circuit, the Court finds that if weighs in favor of a finding that Defendant's compensation plan is bona fide.

### 5.  Work at Other Stores

Plaintiffs occasionally were required to fill in for other absent managers at other stores. This arrangement gives the Court some pause, in that on the days that the employee was not at his or her own store, the amount of their pay was not tied to the sales he or she made that day,

but instead were tied to the amount of sales the other employees made at the managers' home

store.  Defendant's representative testified that Defendants would prorate a bonus calculation

between stores but that it was not practical to calculate only one day of commission for one

store.  Plaintiffs, however, point out that their pay did not appear to be prorated between stores

when they worked more that one day at another store.  If Defendant did prorate a bonus

calculation between stores, that arrangement obviously takes nothing away from its pay structure

qualifying as a bona fide commission rate.  If, however, Defendant did not actually implement its

policy to prorate a bonus calculation between stores, the Court finds that Defendant's

compensation structure still qualifies as a bona fide commission rate, because ultimately

Plaintiffs' pay was still tied to the controllable profits made by Defendant.

### 6.  Conclusion - Bona Fide Commission Rate

Even when construing the Section 7(i) exception to the FLSA's overtime provisions

narrowly against Defendant, the Court concludes that Defendant has met its burden of

establishing that it is entitled to the exception.  Defendant's compensation plan exhibits all of the

necessary traits to constitute a bona fide commission rate.  Further, the Court concludes that

applying the exception to Plaintiffs does not run afoul of the FLSA's purpose or policy of

eliminating "labor conditions detrimental to the maintenance of the minimum standard of living

necessary for health, efficiency, and general wellbeing of workers".  29 U.S.C. § 202(a)

("Congressional finding and declaration of policy").

### IV.  Conclusion

For the reasons set forth above, the Court **GRANTS** Defendant's Motion for Summary

Judgment (ECF No. 22) and **DENIES as MOOT** Plaintiffs' Motion for Conditional Class

Certification and Court Authorized Notice (ECF. No. 19).  The Clerk is **DIRECTED** to **ENTER JUDGMENT** in accordance with this Opinion and Order.

      **IT IS SO ORDERED.**

**/s/ Gregory L. Frost**
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**
